UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., AMERICAN GENERAL LIFE INSURANCE COMPANY, AIG SECURITIES LENDING CORP., THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, AND THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, | : : : : **No. 13 Civ. 951** : : **ECF Case** : : |
| Plaintiffs, | : : |
| -against- | : : |
| MAIDEN LANE II LLC, | : : |
| Defendant. | : : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**REPLY MEMORANDUM IN SUPPORT OF MOTION BY
DEFENDANT MAIDEN LANE II, LLC
FOR A STAY OR APPOINTMENT OF A SPECIAL MASTER**


Of Counsel:

Gary W. Kubek
Jennifer E. Spain
Nicholas C. Tompkins
David B. Noland

Thomas C. Baxter, Jr.
Shari Leventhal
Meghan McCurdy
*Federal Reserve Bank of New York*

February 22, 2013

DEBEVOISE & PLIMPTON LLP
John S. Kiernan
919 Third Avenue
New York, New York  10022
(212) 909-6000
Fax:  (212) 909-6836

*Attorneys for Defendant Maiden Lane II LLC*

Defendant Maiden Lane II LLC ("ML II") submits this memorandum in further support of its motion for a stay of this action pending resolution of a motion currently being addressed by the Central District of California court, or in the alternative, the appointment of the California judge as a special master, and in opposition to the motion for acceleration of proceedings by plaintiffs American International Group, Inc. ("AIG").

## PRELIMINARY STATEMENT

AIG has not sought to conceal its purpose in bringing this declaratory judgment action and seeking accelerated discovery and resolution of its claim.  Unhappy with the California court's determination that it cannot resolve whether AIG owns the tort claims AIG seeks to advance against Bank of America ("B of A") based on the language of the ML II Asset Purchase Agreement ("APA") alone, and with the court's imposition of limits on the discovery it will permit before reaching an accelerated decision on this threshold issue, AIG wants this Court to permit the discovery that the California court has refused it and to rule on the ultimate ownership issue before the California court can. This Court should decline AIG's request for assistance in undermining the California court's procedure and hegemony.

AIG cannot demonstrate any unfair prejudice in having its ownership of the tort claims determined first by the California court that has had B of A's motion before it since October and has already ordered specific further procedures after briefing and argument.  The same law applies in California as would here, and there is no basis for suggesting that the California court, having been selected for this role by the MDL Panel,

lacks competence to apply the law.  AIG's disagreement with the California court's

ruling that the APA is ambiguous (which is founded in language in the APA that

expressly conveys more than just AIG's "right, title and interest" in the RMBS in issue)

and with the scope of discovery ordered by the California court (which the court has

explicitly said is open to further consideration after the parties have completed the

prescribed discovery) does not provide a sustainable basis for undermining that court's

authority by seeking a different result here.

It is premature to determine the collateral estoppel effects of the California court

decision in this proceeding before seeing the California result, but the most likely

outcome is that either success or failure for AIG in that proceeding will eliminate the

need for this litigation.  If AIG loses, that will preclude AIG from seeking here to

relitigate its claim that it owns the tort claims associated with RMBS conveyed to ML II.

If AIG wins, that will determine the outcome of the only dispute relating to ownership of

tort claims associated with RMBS conveyed to ML II as to which ML II has any

substantial economic interest.  Meanwhile, because B of A is not a party to this action,

even success for AIG in this action would not operate as an estoppel against B of A in

California.  These considerations further support staying this action for the short period

until the California court rules on the motion to dismiss.

## I.       THIS COURT SHOULD NOT DISPLACE THE CALIFORNIA DISTRICT COURT'S RULINGS AND PROCEDURES

Although AIG is forcefully critical of the California court's decision to permit

highly limited further discovery before ruling on whether AIG owns the tort claims in

2

issue, the California court has articulated substantial bases for proceeding as it has.  AIG

and B of A both appear to acknowledge the general proposition of New York law that the

transfer of all "right, title and interest" in a security does not by itself operate to transfer

all tort claims arising from ownership of the security.  They also both acknowledge,

though, that under the Second Circuit's decision in *Banque Arabe et Internationale*

*D'investissement v. Md. Nat'l Bank*, 57 F.3d 146, 151-52 (2d Cir. 1995), language in the

transfer agreement that operates to transfer "something more" than the security itself can

be "sufficient to effect the assignment of tort claims based on fraud."  *See* Kiernan Ex. A

at 14-15; Ex. B at 12-13.  Application of the *Banque Arabe* test to the particular language

of the ML II APA led the court to rule, after substantial briefing and oral argument:

> "In this case, it is not determinable as a matter of law that the Asset
> Purchase Agreement includes 'something more' than the contractual rights
> themselves, when the Asset Purchase Agreement transferred all 'right, title
> and interest in and to its share of each RMBS Issue,' 'together with all
> right, title and interest in and to all Related Instruments,' which
> encompasses 'any participation, pooling, servicing or other agreement,
> document or instrument pursuant to which an RMBS Issue has been
> created, pooled, securitized, issued, sold, serviced, enhanced, insured or
> guaranteed . . .'  It is also not determinable as a matter of law that such
> assignment excludes tort claims."  Kiernan Ex. G (1/30/13 CDCA "Order
> Re Discovery As To Standing"), at 2 (internal citations omitted).

In a further conference, the California court explained its reasoning for ordering

limited discovery directed specifically to the parties' intent at the time of the APA.  The

court indicated that it had already received evidence of the Federal Reserve Bank of New

York's intent in entering the agreement, but lacked evidence of AIG's intent.  It also

acknowledged openness to permitting further discovery if either party demonstrated a

3

need for such discovery after the narrow document productions and four depositions it

had authorized.  Addressing AIG's counsel, the court remarked:

> "I have heard nothing, nothing at all from AIG thus far and I thought that
> was unfair to you because . . . [y]ou wouldn't have gotten into this lawsuit
> if you had not assured yourself that you had the right to do it.  What I am
> saying to you is -- that I concluded at the hearing that I hadn't heard
> anything from your side except one thing, and that is you keep talking
> about what the feds said.  I want to hear something about what AIG said.
> Now, I'm not intending to engage in prolonged discovery, but I want a
> couple of witnesses on both -- whoever you two designate, who will come
> in and produce, if you want to, whatever documents that you think are
> most relevant that that person knows about and have them just testify as to
> what the intent of the parties was.  Now, if I can't come to a conclusion on
> that, then we'll see what we do.  But this is not intended to, in any way,
> disadvantage you; it is intended to let you produce some witnesses that
> will say what AIG understood.
>
> …
>
> You can take [the issue of further discovery] up with me after you
> complete this limited attempt to get at the facts.  And if you say that you
> want to produce declarations, I'll think about that. . . .  [W]e will see how
> this comes out."  *See* Kiernan Ex. H (February 4, 2013 Transcript), at
> 13:2-21 and 16:11–20.

With the California court in this posture, and aiming at a hearing in early April, it

would contravene basic principles of judicial deference for this Court either to permit

AIG to pursue immediately in this recently filed action the discovery that the California

court has said AIG cannot pursue unless it makes a showing of need following prescribed

limited initial discovery, or to accelerate this action radically so that the Court can trump

the California court's authority by reaching quick findings about whether AIG owns the

tort claims as a matter of law.  To avoid multiple or inconsistent adjudications,

particularly where the plaintiff is the same in both actions, the Court should stay this case

until the California court completes its determination of the issue.  *See Semmes Motors,*

*Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202-03 (2d Cir. 1970) (applying the first-filed

rule where both actions were brought by the same plaintiff).

II.     **A RULING IN THE CALIFORNIA ACTION WILL EFFECTIVELY
        ELIMINATE THE NEED FOR THIS CASE, WHILE A RULING FROM
        THIS COURT WOULD NOT AVOID FURTHER LITIGATION**

While any determination of the precise collateral estoppel effect of the California

court's decision on this action will have to await the court's issuance of its decision, AIG

seems plainly incorrect in contending that a decision against it in the California court

would not be binding in this case because that decision would be purely "legal" and

determinations of law are not preclusive.  Determinations applying the law to a specific

set of facts are legally preclusive under settled collateral estoppel doctrine, and the

California court's determination following consideration of extrinsic evidence as to

whether AIG conveyed its tort claims in the APA should plainly provide the foundation

of an estoppel if AIG loses.

While AIG apparently contends that the preclusion issue is governed by New

York law, the law governing the preclusive effect of the California court's decision will

be federal law, because the court's jurisdiction is based on an independent statutory grant

of federal question jurisdiction.  *See Am. Int'l Grp. v. Bank of Am.*, 820 F.Supp.2d 555,

557-58 (S.D.N.Y. 2011) (finding federal jurisdiction over the claims in the California

action on the basis of 12 U.S.C. § 632); *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012)

("The preclusive effect of a federal court's judgment issued pursuant to its federal-

question jurisdiction is governed by the federal common law of preclusion.").  Under

federal law, both factual and legal determinations have preclusive effect.  *See Taylor v.*

*Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars successive litigation of an issue of *fact or law* actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.") (quotations omitted) (emphasis added).  If the California court rules that AIG does not own the tort claims, that ruling will be binding in this Court.[1]

Although AIG correctly acknowledges (Opp. at 16 n.7) that "there is no discernible difference between federal and New York law concerning … collateral estoppel," AIG is incorrect in its apparent contention that under New York law collateral estoppel will not apply to a California court judgment against it if any component of the California court's assertedly preclusive decision is "legal."  New York law has consistently applied collateral estoppel to determinations of ultimate facts or application of law to specific facts, as the California court's decision plainly will be (especially after the court takes into account the extrinsic evidence it has directed the parties to submit). *See, e.g., Am. Home Assur. Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 n.1 (N.Y. 1997) (collateral estoppel is potentially available as to a mixed question of law and fact decided by a federal court); *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 401–02 (N.Y. 1993) ("It is a settled principle of contract construction . . . that when the intent of parties to be

---

[1] Both federal and New York law recognize the inapplicability of collateral estoppel to "pure" or "unmixed" questions of law, which are instead governed by *stare decisis*, but that principle has no application to the expected application of law to the facts involved in this case. *See United States v. Stauffer Chem. Co.*, 464 U.S 165, 181 n.2 (1984) (White, J., concurring) (observing that the exception for unmixed questions of law encompasses "abstract legal proposition[s]" as opposed to "application of that proposition to particular facts"); *McGrath v. Gold*, 36 N.Y.2d 406, 411 (N.Y. 1975) ("[C]ollateral estoppel does not apply to an unmixed question of law.").

bound by an agreement must be determined by disputed evidence or inferences outside

the written words of the instrument a question of fact is presented.") (quotations and

alterations omitted); *McGrath v. Gold*, 36 N.Y.2d 406, 411 (N.Y. 1975) ("[A]n ultimate

fact adjudged or determined in the previous litigation must be accepted by the same

parties in subsequent litigation[.]").[2]

AIG's further contention that it will not be bound by the California court's

determination because the court is denying it a "full and fair" opportunity to litigate this

issue is unfounded.  A district judge's reasoned decision to order limited discovery to

address specific issues requiring factual development does not call into question the

collateral estoppel effect of that court's ultimate determination.  *See Hickerson v. City of*

*New York*, 997 F. Supp. 418, 424 (S.D.N.Y. 1998) ("[T]he 'full and fair opportunity'

requirement does not entitle a party to unlimited discovery."), *aff'd* 146 F.3d 99, 109 (2d

Cir. 1998); *Chauffeur's Training School, Inc. v. Spellings*, 478 F.3d 117, 132 (2d Cir.

2007) (plaintiff had full and fair opportunity to litigate despite limitations on discovery

and cross-examination); *Dolan v. Roth*, 170 F. App'x 743, 747 (2d Cir. Mar. 8, 2006)

---

2     No different rule is fairly drawn from the New York Court of Appeals' very recent
      decision in *Auqui v. Seven Thirty One LP*, --- N.E.2d ----, 2013 WL 530589
      (N.Y. Feb. 14, 2013).  While AIG appears to suggest that the Court of Appeals has
      overturned without elaboration or examination its own longstanding authority on this
      point, a much more plausible reading of *Auqui* is that did not announce a new regime
      of collateral estoppel rules, but rather clarified the more limited applicability of
      collateral estoppel principles to administrative agency decisions, and as such has no
      bearing on this case.  *See Auqui*, 2013 WL 530589 (discussing principles of
      collateral estoppel "applicable to determinations of quasi-judicial administrative
      agencies"); *Engel v. Calgon Corp.*, 498 N.Y.S.2d 877, 878-80 (N.Y. App. Div. 1986)
      (discussing policy reasons for the rule that findings of mixed questions of law and
      fact made by administrative agencies do not have preclusive effect).

(fact that plaintiff had not obtained all the discovery in the first action that he sought in the second "[did] not diminish the full and fair opportunity [plaintiff] had to litigate these issues") (quotations omitted).

AIG's denunciation of the California court's procedure as an "inadequate process [that] cannot be granted preclusive effect" (Opp. at 18) is also premature at best, given that the discovery process is not complete and the court has indicated potential willingness to expand its scope upon a showing of need after completion of the current prescribed process.  AIG's ability to challenge any future assertion of preclusion by claiming absence of a "full and fair opportunity to litigate" only reinforces that AIG will endure no prejudice from a stay of this action now.

AIG speculates (Opp. at 9) that a ruling in its favor from this Court would carry "dispositive weight" in its action against B of A in the California action and against other RMBS issuers AIG may sue, but it acknowledges, as it must, that no legally preclusive effect would attach from such a decision to B of A or any other entity not a party to this proceeding.  This absence of preclusive effect means that the declaratory judgment action AIG seeks to have this Court accelerate would not provide the "dispositive" benefit AIG asserts even if AIG were to prevail.  Since the entities AIG wants to sue on this issue all have greater economic interest than ML II in the outcome of this issue, AIG's actions against them will remain the appropriate context for resolving whether AIG owns the tort claims it seeks to maintain.

**CONCLUSION**

For the reasons stated, the Court should stay this action pending resolution of the California motion to dismiss, or, in the alternative, designate Judge Pfaelzer as a Special Master to make a recommendation with respect to the issue before this Court, and should deny AIG's motion to accelerate proceedings.

Dated:  New York, New York
        February 22, 2013

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

Of Counsel:

Gary W. Kubek
Jennifer E. Spain
Nicholas C. Tompkins
David B. Noland

Thomas C. Baxter, Jr.
Shari Leventhal
Meghan McCurdy
*Federal Reserve Bank of New York*

By:____/s/ John S. Kiernan_____
           John S. Kiernan

919 Third Avenue
New York, New York  10022
(212) 909-6000
Fax:  (212) 909-6836

*Attorneys for Defendant Maiden Lane II LLC*